PENDLETON, President,
said that the court had framed a decree in the cause; which he directed to be read by the- clerk in open court, and entered on the order book, as follows:
The court having maturely considered the transcript of- the record, the several exhibits therein referred to, and the arguments of the counsel, is- of opinion upon the several heads of discussion stated, in the interlocutory decree of the said high court of-Chancery, as follows:
On head the first. — “The claim of Carter Braxton to be allowed the difference in depreciation of money between the time of payment, as stated by the commissioner, and the date of the contracts on which the money became due.” That the court are not precluded from this discussion by the third article of the agreement, No. 1, but are at liberty under the last article of the said agreement, to depart from- the principles of the said third articles,- if -right and justice between the parties shall require it. That the connection between the parties was not that of a general copartnery, but particular speculations, in which the joint stock was to consist, not of money, but'of commodities, to be purchased and collected by Carter Braxton, from time to time; and when received by him, became joint property, who was alone answerable to the vendors for the price, and Willing & Morris and Robert Morris accountable to him for-a moiety thereof when the commodity came into the joint stock; and, therefore, in all contracts made by Brax-ton, which were executed by delivery of the commodity -at the time, the date of the contract ought to regulate the scale of depreciation, without respect -to the time of payment; but *that in all executory contracts for purchases made by him, except so far as money was really paid in advance, the time of delivery of the article to him, ought to be the rule; and not the date 'of contract or time of payment; and that in the case of tobacco, the time of delivery shall be that on which the inspectors’ notes were put into the hands of Braxton, or orders, entitling him to call on the inspectors for tobacco inspected, and this rule shall be reciprocally applied in cases of purchases made by Willing & Morris or Morris, and in this application, it appears that an error is committed in entering to the' credit of Willing & Morris, the costs of the brigantine Brax-ton, as in January one thousand seven hundred and seventy-seven, instead of November in the- same year, since, although the said brigantine was purchased and paid for in January, she was bought as the property of Willing & Morris, and remained so until the said month of November, when it was agreed that she should become joint property. If other instances occur, they are to be corrected according to the principle before established. Under this head, there would appear an error in entering to the .credit of Carter Braxton, six thousand eight hundred and twenty-three pounds fourteen shillings and nine pence, as paid Nicholas and Jacob Eaulcon, as of April one thousand seven hundred and seventy7seven, which, by the testimony of Alexander Love and Charles Irving, appears to have been paid in the month of February preceding, and ought to stand at Carter Braxton’s credit in that month, but it being suggested that this error hath been wholly or in part corrected in the accounts, the parties are to be -at liberty to have that error and its correction examined, and properly adjusted.
On head the second. — “A claim of Carter Braxton, of short allowance for loss by depreciation on money' unused.” That there appears no error in this part of the decree.
On head the third. — “The claim of Carter Braxton,, to be allowed for the difference between specie and paper money on the amount of Bingham’s bill on Morris.” That *with this bill, Willing & Morris were no otherwise concerned than as drawees and acceptors, and as such, were chargeable with the money in April, one thousand seven hundred and seventy-seven, but as by Carter Braxton’s consent, the money was to remain in their hands, as a deposit to answer Wroe’s expense in the outfit of the sloop Spitfire, the application of the money to that use, as stated-in the accounts, does justice in that respect between the parties, and that the money received'by Mr. Griffin of Wroe, is rightly charged to Carter Braxton, at the time Mr. Griffin received it.
On head the fourth. — “The claim of Carter Braxton to be allowed the difference in depreciation on the money paid for Dixons & Page’s bills, between the date of the bills and the -time of their payment.” That this claim depending on the state of advances at the time the bills were drawn, according to the third article of the agreement, No. 1, there is no error in this part of - the decree, unless the state of those advances shall be changed by the corrections made in consequence of this decree.
On head the fifth. — “The claim of Carter Braxton to be allowed the difference between seventeen shillings and six pence, *733 and twenty shilling's per hundred, on one hundred and sixty-six thousand three hundred and eighty-two pounds of tobacco, paid Beale for salt.” That by the contract with Beale for the purchase of the salt, amounting in paper to thirteen thousand two hundred and twenty-three pounds, twelve shillings and six pence, part was to be paid for in money, and part in tobacco, and by the final settlement between Brax-ton and Beale, the above quantity of tobacco appears to have been allowed in specie, at seventeen shillings and six pence per hundred, and the residue of the money scaled at five for one. The twenty shillings per hundred for tobacco, which Beale speaks of, respects the tobacco on account of vessels, and not that paid on the salt account. The credit • which Mr. Braxton is entitled to for this article, is two thousand four hundred and forty-four pounds fourteen ^'shillings and six pence specie, (not two thousand six hundred and forty-four pounds fourteen shillings and six pence* stated by Beale, by an error of two hundred pounds in reducing the money,) and if it is not so stated to his credit in the accounts; it ought, by correction, to be made so.
On head the sixth. — “The claim of Carter Braxton to be allowed the difference between specie for which the green beef was received, and the depreciation at the time it wa's sold.” That on the principle now established, Braxton was entitled to a credit for the beef when it was received,' and to be debited the same sum when it was sold. The times of receipt or sale are not ascertained with precision, but probably both happened in the month of March, one thousand seven hundred and seventy-seven, so as to make no difference either as to the scale of the depreciation or- state of advances; and therefore, there is no error in this head of the decree.
On head the seventh. — ‘‘The claim for allowances respecting Pleasants, Shore and Company, and Cory,- Plombard and Company.” That there is no error in this part of the decree, suspending those claims as therein stated.
On head the eighth. — “The claim of Carter Braxton to be allowed for Corbin’s tobacco at the date of contract.” That there is no error in that part of the decree, as it is supposed the tobacco was delivered at the time of the contract, since the contrary doth not appear. The next claim under this head, is, “a claim of Carter Braxton for short credit in money paid Ingram for the Portsmouth and Pamunkey, by reducing the paper money at five for one, instead of three for one.” That the contract between Braxton and Ingram for the purchase of these sloops, was for paper money, and a reference to the price of tobacco at three pounds per hundred, was only made to establish a scale between them for the real value of the paper compared to specie, and this to be adjusted, as was usual in contracts about that period, by the price of twenty shillings specie per hundred, evincing that in their ideas, three for *one was the real scale of depreciation, at that time; and, according to that idea, in their final settlement of accounts, they adjusted the paper money by the ratio of twenty shillings per hundred for tobacco, not with intention of favour on either side, but in pursuit of their real contract. That, under the third and last articles of the agreement, the ideas of the parties at'the time of contract ought to controul the legal scale of depreciation, and entitles Braxton to a credit for specie, on the three thousand six hundred and seventy pounds paper, reduced by a scale of three for one, and on four thousand two hundred pounds at five and an half for one, on account of the money paid Ingram for. these vessels. And, therefore, there is error in so much of the decree as establishes the credit- for the specie value reducing the whole by a scale of five for one.
On head the ninth. — '“The claim of Carter Braxton respecting half the purchase of Ball’s estate.” That the agreement of the parties in Henrico court, in the month of August, one thousand seven hundred and eighty-nine, to annul this contract, will operate as- a final1 discharge of Morris from every item of charge on that occasion, but if at a former period Braxton had advanced money for that purchase, the same ought to stand allowed him in the table of advances', from the time of payment to that of annulling the contract. '
On head the tenth. — “The claim of Carter Braxton for the damages he sustained in consequence of Morris’s not having paid the debt due from Braxton to Archibald M’Call, according to promise. ” It appears, that November the sixteenth, one thousand seven hundred and seventy-eight, Braxton having accepted Cooper’s bill, for sixteen thousand pounds, drawn by Morris on his private account, requests Morris to pay this private debt to M’Call, expressing his hopes that there are in the hapds of White-sides and Companjv sufficient effects to answer it. Morris, in a letter to Braxton, of December eighth, following, speaking of the acceptance of Cooper’s bill, says, “it is well, and *your obligation to M’Call shall be discharged.” The deposition of M’Call proves, that he wrote to Braxton in the beginning of one thousand seven hundred and seventy-nine, demanding payment of this debt, evincing that he would have received it, yet it doth not appear that Morris, throughout that year, offered to pay M’Call, nor until early in one thousand seven hundred and eighty, when a kind of loose offer of payment was-made by Whitesides, and refused by M’Call; and this court is of opinion, that Morris having undertaken to pay this debt, and prevented Braxton from discharging it then by other convenient means, is . bound, however the state of advances between the parties might then be, to recompence Brax-ton for his damages sustained by - the default ; to ascertain the quantum of which damages-should have been referred to a jury instead of the issue tried, which was so made up as to depend upon the state of advances;' the verdict upon that issue, therefore; is unsatisfactory, and ought to be set aside, and a. new issue directed to be tried to ascertain the quantum of damages for the nonpayment; which being tried and certified to the satisfaction of the said *734 high court of chancery, the amount thereof ought to be allowed the said Braxton in account.
On head the eleventh. — “The claim of Carter Braxton to be allowed for the difference to his prejudice in his being charged with ten thousand dollars by Morris, which he alleges was sent him on account of the public.” That there is no error in this part of the decree, which appears supported by the correspondence.
On head the twelfth. — “The claim of Carter Braxton for short credit in commissions.” That from the correspondence between the parlies, it appears that Brax- ■ ton claimed a commission of five per cent, on the amount of purchases, and five per cent, on the amount of sales. Morris objects to it as too high, but seems to yield, if Braxton insists on it, threatening him, however, with contracting the business, or changing his agent: upon which, Braxton leaves it entirely to Morris to settle as he pleased; and so it rested *until December the- thirty-first, one thousand seven hundred and seventy-nine, when Braxton resumes his claim, and states his great fatigue, trouble and expense, in support of it. Morris, in answer, February the third, one thousand seven hundred and eighty, agrees it may be as Braxton thinks right; which is considered as an acquiescence in Braxton’s charge of commissions, and so Morris appears to have understood it, from the .testimony of Charles Irving; that therefore Braxton is entitled to five per cent, commissions on the amount of all purchases, and on the amount of all sales, accountable himself to his sub-agents for their commissions or reward: and there is error in this part of the decree, and the error in the accounts is to be corrected.
On head the thirteenth. — “Braxton’s claim for a specific execution of the agreement as to the Westpoint lands.” That although Braxton was not able, at the time of the contract, to make a complete title to Morris, on account of Dove’s incumbrance, yet by the principles of equity, he was entitled to a specific performance, if he was able to do so at the time of the decree, or within a reasonable . time thereafter, usually allowed; and for this a precedent is furnished in this court, in the case of Pollard against Rogers, ante, 239; and therefore, there is no error in either the interlocutory or final decree on this subject, which are affirmed with this addition, that the time allowed Braxton to perform the condition be extended by the final de? cree, so as to comprehend the same time as formerly allowed.
On head the fourteenth. — “The claim of Braxton to be allowed the difference between allowing Dorcus’s bill at the date instead of the time of payment.” That this bill, drawn by Braxton’s sub-agent upon him, doth not come within the third article of the agreement No. 1, respecting bills draw between the parties; but when the bill was paid, was an advance of so much money by Braxton, and to be then charged: therefore no' error in this part of the decree.
On head the fifteenth. — “The claim of Braxton to be allowed for Cooper’s whole bill at the time of acceptance, *instead of being allowed for his several payments at the time they were made.” That if Braxton had, by accepting this bill, discharged Morris from all liability' to Cooper for the money, he would have had a right to charge the whole at that time, independent of the state of advances; but as Cooper retained the bill, and Morris was liable to him till actual payment, Braxton can only be allowed those payments when made, unless a change in the state of advances shall entitle him to charge the money from the date of the bill, according to the agreement No. 1.
On head the sixteenth. — “The claim of Braxton to be allowed for a moiety of Hudson’s bad debt.” That there is no error in this part of the decree.
On head the seventeenth. — “The claim of Braxton on account of Webb and Company.” This being a joint demand against the company, of which no part has been paid by either, but both sued for the recovery of it, the item of one thousand nine hundred and fifty pounds fourteen shillings and one penny sterling, charged by Brax-ton for a moiety thereof, ought to be wholly discarded from the account, and the eventual charge made to depend upon the recovery, and the discharge thereof by both or either party: and this part of the decree ought to be so modelled as to effect that purpose.
On head the eighteenth. — “The claim of Braxton-for the difference in being allowed, at an improper time, credit for the balance of the money due from Whitesides and Company to him.” That Whitesides and Company were accountable to Braxton for the balance of eight thousand three hundred and eighteen pounds five shillings and six pence, in July, one thousand seven hundred and seventy-nine, when the account of sale was closed, and not before; and in like manner for the sales of the remaining goods, when the account of them was rendered. At the same periods, Robert Morris ought to be chargeable to Braxton! not as a partner of that house, but as having had Braxton’s order, in one thousand seven hundred and seventy-eight, to ^receive the money, and was entitled to a credit for it with that company, at the periods when they became answerable, and the rather, as Whitesides and Company’, in their letter to Braxton of July the thirteenth, one thousand seven hundred and seventy-nine, stating the balance, say, “which sum we shall account for with Mr. Morris, whom you will please to charge therewith.” How this money is credited, the court are not able to discover; but if it be not credited according to the foregoing principles, is to be corrected and made conformable thereto.
On head the nineteenth. — “The claim of Carter Braxton to be allowed for a supposed error in the state of the sterling bond.” That this court do not take upon them to decide whether this bond, bearing an interest of six per cent., be usurious and void at law or not, the decision of which belongs properly to a court of law; but if it was there adjudged to be so, this court would relieve against that judgment, on the *735 ground of its being a fair transaction, and decree just compensation. The items of the account for which the bond was given, appear to be wholly unexceptionable, provided that there was either deducted previous to taking the bond, or Morris is otherwise charged in the accounts for his proportion, according to his share in the privateer, (independent of the defaults of other partners, for which he is not to be accountable,) of the money paid for the Portuguese vessel. The papers do not enable the court to decide whether this has been done or not:’ if not, the decree is to be changed, so as to correct that error.
Upon the whole matter, it is decreed and ordered, that such parts of the interlocutory and final decrees as are before stated to be without error, be affirmed; that such parts as are stated to be erroneous be reversed; and that the appellees pay to the appellant his costs by him expended in the prosecution of his appeals aforesaid here, and the cause is remanded to the said high court of chancery to have the directory and eventual parts of the said decrees enquired of, and proceeded on according to the principles respectively laid down as to each part.

 Usury. — See monographic note on “usury” appended to Coffman v. Miller, 26 Gratt. 698.
Negotiable instruments — Acceptance — Payment.— Acceptance merely does not entitle the acceptor to sue the drawer, there must be payment. Christian v. Keen, 80 Va. 377, citing Braxton v. Willing, 4 Call 288. See also, monographic note on “Bills, Notes and Checks” appended to Archer v. Ward, 9 Gratt. 622.